PONDER, Justice.
Lewis J. Baumann and eight insurance companies, who had paid him a portion of the loss he had sustained by fire, brought suit against the Southwestern Gas and Electric Company seeking to recover the value of a commercial building and its contents, alleged to have been destroyed by fire of an electrical origin resulting from low voltage negligently furnished by the defendant. The defendant denied any negligence on its part or that the fire was of electrical origin. The defendant averred, in the alternative, that should it be determined that the fire was of electrical origin that Baumann contributed to the cause of the fire by not having proper fuses in his electric circuits in the building, or by not having his building adequately wired, or by not having his appliances in proper condition, or by not having his appliances equipped with proper detective devices, or by overloading the electric circuits, or by any one or more or a combination of the foregoing causes.
On trial of the case, the lower court arrived at the conclusion that the plaintiffs had failed to prove the fire was of electrical origin and gave judgment rejecting the plaintiffs’ demands. The plaintiffs have appealed.
The plaintiffs contend that the fire was of electrical origin, resulting from low voltage negligently furnished to the building by the defendant, and that the doctrine of res ipsa loquitur should be applied.
The plaintiff, Baumann, owned a commercial building located in Shreveport, Louisiana, in which he operated a wholesale and retail drug business. The part of the building used for a retail store was next to Murphy Street and the wholesale business was conducted on the other side of the building. The fire originated in the wholesale department and destroyed the building on August 12, 1946. The electricity required for the operation of the business was furnished by the defendant.
We have examined the evidence in this case and cannot determine the origin of the fire. One witness testified that he saw flashes in the building and turned in the fire alarm. A police officer who was riding a trolley car home noticed smoke coming from the second story of the building and immediately got off the trolley car and turned in the alarm. The City Fire Inspector and the officials of the fire department inspected the premises and arrived at the conclusion that the fire was of undetermined origin. There is considerable testimony in *475 the record about the effect of low voltage, which is extremely conflicting. The preponderance of the expert testimony is to the effect that the fire could not have been caused by low voltage. No- useful purpose could be gained by reciting the voluminous testimony of the experts based on hypothetical questions. However, it' appears that where proper fuses are used that they will melt and blow out the moment a circuit is overloaded.
This building was rewired some ten years before the trial of this case. The evidence does not disclose whether or not any of the circuits in the building were overloaded. Baumann had made complaint before the fire occurred that his lights were flickering and that two of his electrical motors, used in his retail business, had burned out. Tests were made prior to the fire to determine whether there was low voltage. Tests were made by the defendant at the place where the 'wires entered the building and tests, on behalf of Baumann, were made on the wires at or near where the motors had burned out. These tests are in conflict.
Testimony was offered to the effect that other customers had had some trouble with their electrical' appliances, the cause of which is not shown. We cannot from the evidence in" this case determine whether the motors burned out or the lights flickered because of.low voltage or overloaded circuits. Some of Baumann’s employees testified that they smelled rubber burning on the evening before the fire but could not locate the source. However, Baumann’s son-in-law testified that he detected no fumes of burning rubber when he closed the store that night. He also' testified that he returned to the store after closing it and detected no such fumes at that time. There is considerable testimony regarding a Greenfield, a flexible conduit used in wiring buildings. Some of the witnesses stated that the condition of the wires in the Greenfield indicated that the fire was of electrical origin, but most of the witnesses, especially the most competent experts, testified to the contrary. There is no evidence in this record to show exactly where the fire originated or whether it originated at or near any electrical wires or electrical appliances. The evidence shows only that it originated somewhere in the wholesale department of the building.
The fire inspector, the officials of the fire department and the lower court were unable to determine the cause of the fire. After a careful review of all the evidence in this case, we are compelled to arrive at the same conclusion.
Since we have arrived at the conclusion that it has not been established that the fire was of electrical origin, it is unnecessary to consider the application of res ipsa loquitur.
For the reasons assigned, the judgment is affirmed at' appellants’ cost.